[Civ. No. 18201. Second Dist., Div. One. Sept. 25, 1951.]

HARRY L. MILLER, Appellant, v. MIDWAY FISHING TOOL COMPANY (a Corporation), Respondent.

Warren White, Mark F. Jones and Mark F. Jones, Jr., for Appellant.

Swaffield, Madden & McCarry, Gibson, Dunn & Crutcher, Norman S. Sterry, Philip C. Sterry and William B. Clemmer for Respondent.

HANSON, J. pro tem.—█ The only question presented by this appeal is whether the trial court erred in receiving evidence as to the customary preliminary inspection made of drilling pipe hoists by oil equipment rental companies at the time the hoists were rented to drilling concerns.

The respondent who was the defendant below is engaged in the business of supplying oil well tools and equipment to oil drilling concerns upon a rental basis. The defendant leased to the employer of appellant what is known in the oil industry as a "handling elevator." It is used to hoist oil well steel casing upwards in an oil derrick so that it can then be lowered into the well that is being drilled. A part of the "handling elevator" consists of a steel collar to which is attached steel cables. As it is necessary to fit the collar around the pipe to be hoisted the collar is provided with a hinge and directly opposite on the outer side with a latch and pin.

While the elevator was being operated at an oil well by coemployees of the plaintiff the casing came loose when about 30 feet in the air and struck the plaintiff, causing severe and permanent injuries. The plaintiff charged that the collar was unsafe for the purpose for which it was leased, in that the

inside circumference of the collar was too large to securely hold a 7-inch casing and that various parts of the collar or elevator were worn and in bad repair.

The defense centered about the claim that the casing fell because the collar was either imperfectly latched or not latched at all by the coemployees of plaintiff who were operating the elevator. The jury returned a verdict for the defendant.

In the course of the trial employees of the defendant testified to the manual and visual inspection they gave the elevator and its appliances before it was delivered to the employer of the plaintiff. Thereafter, over the objection of the plaintiff, the defendant was permitted to show by the testimony of numerous witnesses the general custom prevailing in the trade with respect to inspecting such equipment and to show that the defendant followed the custom of the trade.

Shortly stated, appellant contends that the admission of testimony as to the general custom was prejudicial error, that such evidence is inadmissible where there is no contractual relation between the plaintiff and the defendant, and the plaintiff has not assumed the risk.

■ The rule is well established that evidence of the custom of a trade is ordinarily admissible in negligence cases where it has a bearing on either negligence or contributory negligence (*Fowler* v. *Key System Transit Lines,* 37 Cal.2d 65 [230 P.2d 339]; 38 Am.Jur., Negligence, § 317). In *Burke* v. *John E. Marshall, Inc.,* 42 Cal.App.2d 195 [108 P.2d 738] (hearing denied), the court said: "Where the issue is one of negligence in the performance or failure to perform some act, it is clear that evidence of the ordinary practice and custom which is generally followed in the performance of such act under the same or similar circumstances is competent. (*Thomas* v. *Southern Pacific Co.,* 116 Cal.App. 126 [2 P.2d 544]; *Hennesey* v. *Bingham,* 125 Cal. 627 [58 P. 200].)"

■ Evidence of custom is received not as proof of, or as a substitute for, the substantive law's standard of conduct, which is due care, but merely to aid the jury in determining from such evidence and all the other evidence in the case whether the particular conduct of a party does or does not measure up to the legal standard. (See 2 Wigmore on Evidence, 3d ed., § 461.)

■ We come then to the more pointed question in this case which is whether there is an exception to the rule, as appellant contends, in cases which do not arise out of contractual relationships. In support of this contention appellant cites four

cases: *Phoenix Assur. Co.* v. *Texas Holding Co.*, 81 Cal.App. 61 [252 P. 1082]; *Carroll* v. *Central Counties Gas Co.*, 96 Cal.App. 161 [273 P. 875]; *Home Fire Ins. Co.* v. *Southwestern Eng. Corp.*, 114 Cal.App. 235 [299 P. 771]; *Johnson* v. *Western Air Exp. Corp.*, 45 Cal.App.2d 614 [114 P.2d 688]. The Phoenix is the main case relied on.

In that case the defendant was sued for damages occasioned to chattel property on an adjoining highway caused by the explosion of one of its oil storage tanks. The trial court excluded evidence offered by defendant to show that other oil companies in the field were using the same type of tank because he regarded such mere usage by others as being immaterial. In making that ruling he announced he would permit the defendant to show, if it could, that the use by it of the tank in question comported with good and proper practice among oil men. We think the ruling of the trial court in that case could properly have been sustained on the ground that the question as it was framed was improper in form or that the evidence of usage offered was limited to too narrow a field and perhaps on other grounds. But we do not think that the evidence could properly be excluded on the ground which seems to be suggested by the appellate court, i.e., that custom or usage is not admissible in cases where there is no contractual relationship between the parties involved. We fail to see that any such distinction can be made on the basis of sound reason and we know of no authority that sustains any such rule.

In view of what we have here said it is not necessary to discuss the Carroll case cited to us by appellant further than to say it cites and purports to follow the rule laid down in the Phoenix case. However, it should be noted that the court based its ruling not only on the theory of the Phoenix case but also upon the fact as it put it that "the specific practice of others cannot be admitted in testimony *as an excuse for the alleged negligent act of the defendant.*" (Italics supplied.)

As we have pointed out evidence of custom may not be offered for the purpose of "excusing a negligent act" but the same evidence of custom may be offered for the bearing it has to evidence due care or a want of it (*Cf.* Prosser on Torts, § 37).

In the Insurance Company case it was held that a question propounded to a witness as to custom was improper not only because of the precedent set in the Phoenix case but because no proper foundation had been laid for expert testimony.

The ruling in the Johnson case was not based upon the principle laid down in the Phoenix case.

In view of the conclusion we have reached it is unnecessary to consider the contention made by respondent that a contractual relationship existed between the parties.

In this case the respondent has adopted the procedure of not detailing the facts of, and quotations from, the cases it cites in its brief and argument except to a very minor extent. However, all the cases cited, if not detailed or quoted from are digested and set forth in an appendix to the brief. Accordingly, we have found it easy to follow the brief and argument and have found the appendix a quick and ready reference where we desired to read in some detail a case cited. We think there is much to commend in the practice here adopted by respondent.

Judgment affirmed.

White, P. J., and Drapeau, J., concurred.